UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDREAS AROS, individually and on Behalf of other similarly situated individuals, | : |
| | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : Civil No. 310-CV-00073 (JCH) |
| | : |
| UNITED RENTALS, INC. and UNITED RENTALS (NORTH AMERICA) INC., | : |
| | : |
| | : |
| Defendants. | : JULY 13, 2010 |
| | : |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO CREATE A CONDITIONAL OPT-IN CLASS
AND AUTHORIZE NOTICE TO PUTATIVE CLASS MEMBERS**

William J. Anthony
David R. Golder
JACKSON LEWIS LLP
90 State House Square, 8th Floor
Hartford, CT 06103
P: (860) 522-0404
F: (860) 247-1330

Counsel for Defendants
United Rentals, Inc. and United Rentals
(North America) Inc.

**ORAL ARGUMENT REQUESTED
TESTIMONY NOT REQUIRED**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................iii

I.     PRELIMINARY STATEMENT ................................................................1

II.    STATEMENT OF FACTS ........................................................................3

    A.     Background Of United Rentals..........................................................3

    B.     Operations Managers Are Responsible For Managing Employees
        And Branch Operations.......................................................................4

    C.     The Putative Class Is Not Comprised Of Employees Similarly Situated
        To Plaintiff........................................................................................5

        1.     Operations Managers Typically Supervise At Least Two Inside
            Sales Representatives In Addition To Other Employees........................5

        2.     The Operations Manager Job Varies For Each Operations Manager
            Based On The Situation At Their Respective Branch ...........................6

        3.     Plaintiff Denies He Performs The Exempt Management Job Duties
            That Are Shared Among Other Operations Managers...........................9

    D.     Plaintiff's Job Situation Was Atypical And, As Such, Cannot Be Similarly
        Situated to Other Operations Managers .............................................11

        1.     Plaintiff's Job Consisted Mostly of The Duties Of An Inside Sales
            Representative In Part Because Plaintiff's Branch Had No Inside
            Sales Representative For Almost All The Time Plaintiff Was An
            Operations Manager................................................................11

        2.     Unlike Other Operations Managers, Plaintiff Lacked Autonomy
            To Run The Branch Operations, Because Plaintiff's Branch
            Manager Micro-Managed Him ......................................................13

        3.     Plaintiff Failed To Perform The Job Duties Of An Operations
            Manager .......................................................................13

    E.     Plaintiff Submits Just One Affidavit, And The Affidavit Is Not Credible ..........15

    F.     The Differences Between Plaintiff's Job Duties And The Putative Class
        Members' Job Duties Cannot Be Determined On A Collective Basis ...............16

G.    The Lack Of Any Declarations From The Punitive Class Or Opt-Ins To This Case Demonstrates That The Putative Class Has No Interest In This Lawsuit ................................................................................................17

III.    ARGUMENT ................................................................................................17

A.    Plaintiff's Motion Fails, Because Plaintiff Failed To File His Consent To To This Action As Required By The FLSA ........................................19

B.    Plaintiff's Unique Job Situation Is Not Representative Of Operations Managers ................................................................................................21

    1.    Plaintiff Disavows The Operations Manager Job Description And Even Testifies That He Was Performing The Job Of An Inside Sales Representative ................................................................................21

    2.    United Rentals' Declarations Establish That The Job Duties Of Operations Managers Are Significantly Different From The Job Duties Of Plaintiff And Other Inside Sales Representatives ..................22

    3.    Plaintiff's Poor Performance And Personal Deviations At Work Cannot Turn His Exempt Job Into A Non-Exempt Job .........................24

C.    United Rentals' Declarations Establish The Operations Managers' Job Duties Vary ................................................................................................25

D.    Plaintiff Fails To Present Any Evidence That A Viable Collective Action Exists ................................................................................................27

    1.    Plaintiff's Own Affidavit Containing Conclusory Assertions That Other Workers Are Similarly Situated Is Insufficient To Satisfy His Burden ................................................................................27

    2.    Plaintiff Has No Evidence Of A Common Policy Or Plan That *Violated* The Law ................................................................................28

E.    There is Insufficient Showing Of Potential Class-Members Who Desire To Opt In ................................................................................................32

F.    Improper Proposed Notice ................................................................34

IV.    CONCLUSION ................................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

Basco v. Wal-Mart Stores, Inc., No. Civ. A. 00-3184, 2004 WL 1497709
(E.D. La. July 2, 2004)........................................................................................................19

Cano v. Four M Food Corp., No. 08 Civ. 3005 (JFB) (AKT), 2009 WL 5710143
(E.D.N.Y. Feb. 3, 2009)......................................................................................................30

Dean v. Priceline.com, Inc., No. 3:00CV1273 (DJS), 2001 U.S. Dist. 24982
(D. Conn. Mar. 9, 2001)................................................................................................28, 33

Diaz v. Electronics Boutique of Am., Inc., No. 04-CV-0840E (Sr), 2005 U.S. Dist.
LEXIS 30382 (W.D.N.Y. Oct. 13, 2005) ......................................................................28, 32

Donihoo v. Dallas Airmotive, Inc., No. 3:97-CV-0109-P, 1998 U.S. Dist. LEXIS
2318 (N.D. Tex. Feb. 23, 1998)..........................................................................................28

Dybach v. Florida Dep't of Corrections, 942 F.2d 1562 (11th Cir. Fla. 1991) ..........................35

El v. Potter, No. 01 Civ. 6125, 2004 WL 2793166 (S.D.N.Y. Dec. 6, 2004) ............................23

Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941 (W.D. Ark. 2003)................................22

Gomez v. United Forming, Inc., No. 6:09-cv-576-Orl-31GJK, 2009 WL 3367165
(M.D. Fla. Oct. 15, 2009).....................................................................................................21

Gonzalez v. El Acajutla Restaurant, Inc., No. CV 04-1515, 2007 WL 869583
(E.D.N.Y. Mar. 20, 2007) ....................................................................................................23

H&R Block, Ltd. v. Housden, 186 F.R.D. 399 (E.D. Tex. 1999)................................................35

Harkins v. Riverboat Servs., Inc., 385 F.3d 1099 (7th Cir. 2004)...............................................22

Harris v. Fee Transp. Servs., Inc., No. 3:05CV0077-P, 2006 WL 1994586
(N.D. Tex. May 15, 2006).....................................................................................................28

Haynes v. Singer, 696 F.2d 884 (11th Cir. 1983)........................................................................30

Hendricks v. J.P. Morgan Chase Bank, N.A., No. 3:09-CV-613 (JCH), 2009 WL
5170180 (D. Conn. Dec. 15, 2009)................................................. 21, 25, 26, 30, 35

Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165 (1989)....................................................21, 35

Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265 (M.D. Ala. 2004) .............................. 20, 21, 28, 32

Lee v. Vance Executive Production, Inc., 7 Fed. Appx. 160 (4th Cir. 2001) ............................. 22

Lentz v. Spanky's Restaurant II, Inc., 491 F. Supp. 2d 663 (N.D. Tex. 2007) ........................... 31

Mackenzie v. Kindred Hosps., East, L.L.C., 276 F. Supp. 2d 1211 (M.D. Fla. 2003) ............... 36

Mares v. Caesars Entertainment, Inc., No. 4:06-cv-0060-JDT-WGH, 2007 WL 118877
(S.D. Md. Jan. 10, 2007) ................................................................................................. 30

McLaughlin v. Boston Harbor Cruises, Inc., No. 03-10905, 2006 WL 1998629
(D. Mass. July 17, 2006) ................................................................................................. 23

Mike v. Safeco Ins. Co. of Am., 274 F. Supp. 2d 216 (D. Conn. 2003) ..................... 24-26, 31-35

Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493 (D.N.J. 2000) ................. 28, 32, 33

Murray v. Stuckey's, Inc., 939 F.2d 614 (8th Cir. 1991) ............................................................. 27

Powers v. Centennial Communications Corp., No. 1:08-cv-208-PPC, 2009 U.S.
Dist. LEXIS 116819 (N.D. Ind. Dec. 14, 2009) .......................................................... 36

Ramirez v. Yosemite Water Co., 20 Cal. 4th 785 (Cal. 1999) ..................................................... 27

Rappaport v. Embarq Mgmt. Co., No. 6:07-CV-468, 2007 WL 4482581
(M.D. Fla. Dec. 18, 2007) ............................................................................................... 20

Rodgers v. CVS Pharmacy, Inc., No. 8:05-CV770T, 2006 WL 752831 (M.D. Fla. 2006) ......... 36

Stein v. J.C. Penney Co., 557 F. Supp. 398 (W.D. Tenn. 1983) ................................................. 27

Trinh v. JP Morgan Chase & Co., No. 07-CV-1666 W (WMC), 2008 U.S. Dist.
LEXIS 33016 (S.D. Cal. Apr. 22, 2008) ................................................................... 32, 33

Ulysse v. Divosta Bldg. Corp., No. 06-80338-CIV-RYSKAMP/VITUNAC,
2006 WL 3618449 (S.D. Fla. Dec. 7, 2006) .................................................................. 30

West v. Border Foods, Inc., No. 05-2525 (DWF/RLE), 2006 WL 189252
(D. Minn. July 10, 2006) ................................................................................................. 22

Whittlesey v. Union Carbide Corp., 567 F. Supp. 1320 (S.D.N.Y. 1983) ................................... 27

Woods v. New York Life Ins. Co., 686 F.2d 578 (7th Cir. 1982) ................................................ 36

## FEDERAL STATUTES

Fair Labor Standards Act, 29 U.S.C. § 216(b)...............................................................17

# I. PRELIMINARY STATEMENT

Plaintiff Andreas Aros ("Plaintiff"), a former United Rentals employee who was an Operations Manager for less than one year, seeks to conditionally certify a national class of hundreds of Operations Managers without meeting the basic requirements necessary for a collective action. To justify certification of this national class, Plaintiff must establish that he is similarly situated to the class. Plaintiff, however, fails to meet his burden for several legally dispositive reasons.

First, Plaintiff cannot be the representative of a class of Operations Managers, because he disavows the Operations Manager job description. In fact, Plaintiff's testimony goes beyond a disavowal of the job description. Plaintiff testified that, due to circumstances unique to his work situation, he was performing the lower-level job of Inside Sales Representative, not the higher-level job of Operations Manager. Consequently, Plaintiff cannot be similarly situated to a class of Operations Managers. Moreover, Plaintiff readily concedes that he spent a good deal of his work time tending to personal issues such as sending and receiving pornography to co-workers and acquaintances, surfing the internet, preparing his own and his girlfriend's resumes, cover letters and job applications and otherwise deviating from his assigned job duties.

Second, the Operations Manager job varies based on many factors including, but not limited to, the branch, region, customer base, focus of the Operations Manager, number and type of employees the Operations Manager supervises, presence of an on-site Branch Manager, and working relationship between the Branch Manager and Operations Manager. Operations Managers do share some similarities (mostly exempt job duties), but they are not similarly situated in the areas of their jobs which are relevant to Plaintiff's misclassification theory. The differences in an Operations Manager cannot be determined on a collective basis due to the

varying nature of the job duties performed. Consequently, a class of Operations Managers is not suitable for collective treatment.

Third, Plaintiff has no evidence of any common policy or plan that violated the law. Instead, Plaintiff seeks to distract this Court by listing all the legally *irrelevant* similarities among Operations Managers including United Rentals' standardized procedures like anti-harassment training. Plaintiff fails to offer any legally *relevant* factual nexus. As such, a collective action would require separate, mini-trials in which the day-to-day job duties of each Operations Manager would need to be examined for applicability of the various Fair Labor Standards Act ("FLSA") exemptions at issue here.

Fourth, Plaintiff has no evidence from the putative class. Plaintiff's only support for his sweeping statements about a national class of hundreds of Operations Managers is his own affidavit and testimony regarding his own employment, which was especially atypical. Plaintiff's self-serving, conclusory statements regarding other Operations Managers are not credible as they are gross embellishments of transitory observations of four individuals. Plaintiff fails to submit any declarations from these four individuals or any members of the putative class.

Finally, Plaintiff has no indicia of support from the putative class. Not one putative class member has opted into this action even though (1) Plaintiff contacted putative class members seeking participation, (2) Plaintiff filed this case approximately six months ago, and (3) Plaintiff's counsel has been advertising this case on a website with a link to an opt-in form to join the case. Consequently, Plaintiff fails to demonstrate sufficient (or any) interest to justify certification.

In addition to all these dispositive legal reasons, Plaintiff's motion fails because Plaintiff did not file a written consent as required by the FLSA to maintain a collective action.

As such, Plaintiff seeks to certify a *national* class of *hundreds* of Operations Managers at Defendants' significant expense and the expense of this Court's time and resources without fulfilling his own minimal, but necessary, procedural requirement.

## II. STATEMENT OF FACTS

### A. Background Of United Rentals

United Rentals is an equipment rental company with over 500 branch locations across the country.[1] United Rentals rents, sells, and services construction equipment for a wide variety of customers, including construction companies, specialized contractors, public entities, private homeowners and others.[2] United Rentals rents, sells and services equipment in four categories: General, Aerial, Trench, and Power/HVAC.[3] General includes the broadest array of equipment from large earth-moving equipment, like bulldozers, to smaller home and garden rentals.[4] Aerial has specialized equipment, like scissor lifts and boom lifts, which is used for huge construction jobs like the building of a new sports stadium.[5] Trench provides engineered solutions to protect workers who operate below ground.[6] Power/HVAC provides major power rentals to large events or disaster locations, like powering up a tent city after hurricane Katrina.[7]

United Rentals branches "have millions upon millions of dollars of equipment" that needs to be maintained and "delivered on time to customers in very stressful situations on large construction sites."[8] United Rentals branches vary in size and complexity based on the

---

[1] Affidavit of Craig Pintoff ("Pintoff Aff.") (attached as Exhibit C to the Affidavit of William J. Anthony ("Anthony Aff.") filed herewith) ¶ 2.
[2] Pintoff Aff. ¶ 2.
[3] Deposition of Craig Pintoff ("Pintoff Dep.") (cited pages of which are attached as Exhibit B to Anthony Aff.) 26:22-27:4.
[4] Pintoff Dep. 27:11-14.
[5] Pintoff Dep. 27:15-28:6.
[6] Pintoff Dep. 28:7-13.
[7] Pintoff Dep. 28:14-18.
[8] Pintoff Dep. 125:17-25.

needs of customers and size of the branch.[9]  Some branches have a few million dollars worth of equipment on site, while others branches have more than twenty million dollars worth of equipment on site.[10]  Consequently, the branches are staffed with varying personnel including management employees, service employees and mechanics, sales employees, yard employees, and employees who deliver the equipment.[11]

## B. Operations Managers Are Responsible For Managing Employees And Branch Operations

Operations Managers are responsible for "management" of employees and for "driving the performance of the branch, partnering with the Branch Manager or District Manager."[12]  The experience to manage in the stressful, high-paced environment at the branches is "very important," which is why Operations Managers are required to have at least three years of management experience.[13]  The operations of a United Rentals branch are complex and involve enormous liability and risk that Operations Managers manage on a daily basis.[14]  Operations Managers earn salaries that average approximately $60,000.[15]  Some Operations Managers earn salaries more than $100,000.[16]  In addition to their salaries, all Operations Managers are eligible for profit sharing and bonuses that are only available to upper management.[17]

Even though there is "a lot of variation and a lot of complexity" in how United Rentals operates, the company maintains a minimum requirement for Operations Managers to

---

[9] Pintoff Aff. ¶ 3.
[10] Pintoff Aff. ¶ 3.
[11] Pintoff Aff. ¶ 3.
[12] Pintoff Dep. 125:1-12.
[13] Pintoff Dep. 125:17-126:21.
[14] Pintoff Aff. ¶ 4.
[15] Pintoff Aff. ¶ 5.
[16] Pintoff Aff. ¶ 5.
[17] Pintoff Aff. ¶ 5.

supervise and manage at least two people.[18]   The business component for this management
requirement is that the Operations Managers are "a highly paid role . . . eligible for profit sharing
and bonuses" and if there are not sufficient people to manage "there is less need to have that
expensive [Operations Manager] role at a branch."[19]   The legal component for this management
requirement is that United Rentals wants to ensure that the Operations Manager position is
properly classified as exempt.[20]   When United Rentals went through a reduction in force, the
company analyzed the workforce to determine whether the Operations Managers at all the
locations still met both the business and legal components based on the new staffing levels.[21]
The Operations Managers who no longer met the standard of supervising and managing at least
two people were moved into nonexempt positions.[22]   Moreover, United Rentals does an annual
performance assessment and audits whether employees are reporting to the appropriate people.[23]
In other words, United Rentals strives to maintain the Operations Manager position as a
management position that justifies the high compensation and also properly qualifies as exempt
under the law.

### C. The Putative Class Is Not Comprised Of Employees Similarly Situated To Plaintiff

#### 1. Operations Managers Typically Supervise At Least Two Inside Sales Representatives In Addition To Other Employees

Not every United Rentals branch has an Operations Manager.  The United Rentals
branches that do have Operations Managers are typically the larger branches.[24]   United Rentals
branches that have an Operations Manager typically have at least two Inside Sales
Representatives along with Drivers and other positions, which are supervised by the Operations

[18] Pintoff Dep. 46:5-46:18.
[19] Pintoff Dep. 46:19-47:6.
[20] Pintoff Dep. 47:11-19.
[21] Pintoff Dep. 85:4-87:2.
[22] Pintoff Dep. 85:4-87:2.
[23] Pintoff Dep. 134:2-15.
[24] Pintoff Dep. 44:17-22.

Managers.[25]   Branches that only have one Inside Sales Representative "will likely not have an operations manager."[26]

### 2. The Operations Manager Job Varies For Each Operations Manager Based On The Situation At Their Respective Branch

Operations Managers are not similarly situated in the areas of their jobs relevant to Plaintiff's FLSA misclassification theory, because Operations Manager job duties vary in areas relevant to the FLSA.   The Operations Manager job varies because United Rentals branches vary significantly due to many factors, including the customer demand and equipment needs, industry, geographic location, and size.[27]   Consequently, the employee staffing of the branches varies.[28]   Some branches have more than forty employees.[29]   Other branches have less than ten employees.[30]   Some branches have multiple Operations Managers.[31]   Some branches have a Branch Manager on site.[32]   Other branches do not have a Branch Manager on site.[33]   Other branches have a Branch Manager who is technically on site but is frequently outside the branch with the Outside Sales Representatives or performing other duties unrelated to the home-base branch.[34]   Other branches have Branch Managers who are also District Managers and, as such, have significant responsibilities for multiple branches.[35]   Some branches have personnel

---

[25] Pintoff Dep. 44:23-46:18.

[26] Pintoff Dep. 44:23-45:10.

[27] Pintoff Aff. ¶ 6.

[28] Pintoff Aff. ¶ 6.

[29] Pintoff Aff. ¶ 6.

[30] Pintoff Aff. ¶ 6.

[31] Pintoff Aff. ¶ 6.  See also Declaration of Katherine Drenski ("Drenski Decl.") (attached as Exhibit G to Anthony Aff.) ¶ 1.

[32] Pintoff Aff. ¶ 6.  See also Declaration of Josh Johnson ("Johnson Decl.") (attached as Exhibit J to Anthony Aff.) ¶ 15.

[33] Pintoff Aff. ¶ 6.  See also Declaration of Edwin Petry ("Petry Decl.") (attached as Exhibit E to Anthony Aff.) ¶ 1; Declaration of Wade Whittemore ("Whittemore Decl.") (attached as Exhibit I to Anthony Aff.) ¶ 4.

[34] Pintoff Aff. ¶ 6.

[35] Pintoff Aff. ¶ 6.  See also Drenski Decl. ¶ 23 ("[M]y Branch Manager is also the District Manager.  As such, he spends a significant amount of his time outside the office dealing with issues regarding other branches in his district."); Declaration of Alfred Guggino ("Guggino Decl.") (attached as Exhibit H to Anthony Aff.) ¶ 3 ("I report directly to the District Manager.  The District Manager does not visit the Milford branch much at all, he has

like Service Managers, Mechanics, Shop Foremen, and Yard Personnel that other branches do

not have.[36]  Some branches like Plaintiff's have unionized Drivers,[37] while at other branches the

Drivers are not in a union.[38]  Some branches are located on the site of the customer and only

service that one customer.[39]

      All of these factors impact the daily job duties and management responsibilities of

the Operations Managers.  Some Operations Managers spend a minimal (and varying) amount of

time performing sales duties similar to Inside Sales Representatives.[40]  Some Operations

Managers supervise more than twenty employees.[41]  Some Operations Managers supervise

Mechanics, Shop Managers, Shop Foremen, and other personnel in addition to supervising Inside

Sales Representatives and Drivers.[42]  Some Operations Managers manage branches located

---

probably not been here at the branch in at least six months."); (Declaration of Richard Toaso ("Toaso Decl.") (attached as Exhibit L to Anthony Aff.) ¶ 2 ("My Branch Manager is also a District Manager, so he is not on site at this branch very often, perhaps one or two times each week for a couple of hours at a time.").

[36] Pintoff Aff. ¶ 6.

[37] Deposition of Andreas Aros ("Aros Dep.") (cited pages of which are attached as Exhibit A to Anthony Aff.) at 71:16-22 (Plaintiff testifying that he could not make daily adjustments of his Drivers' schedules, because their union contract required two weeks of lead time to change their hours); see also Declaration of Michelle Smith ("Smith Decl.") (attached as Exhibit D to Anthony Aff.) ¶ 3; Toaso Decl. ¶ 8 ("Although the schedule for the unionized Drivers at my branch is set, if a Driver is needed early or needed to stay late to meet customer demands, my permission is required to call the Driver in early or ask the Driver to stay late.").

[38] Petry Decl. ¶ 8.

[39] Pintoff Aff. ¶ 6.  See also Petry Decl. ¶ 2.

[40] Smith Decl. ¶ 21 ("I do not spend much time answering phone calls from customers."); Petry Decl. ¶ 10 ("I would estimate I spend approximately 10% of my day on sales calls."); Declaration of Daniel Molzan ("Molzan Decl.") (attached as Exhibit F to Anthony Aff.) ¶ 13 ("Even when I am on the sales counter answering sales calls, which I estimate to be approximately 35% of my time, I am still directing individuals and reviewing the work and conduct of my employees."); Drenski Decl. ¶ 13 ("I would estimate that I spend approximately 20% of my time at work on Inside Sales Representative-type sales duties like answering sales calls from customers and helping walk-in customers."); Whittemore Decl. ¶ 19 ("I probably spend about 20% of my days on sales calls and the processing of sales calls.  I spend the vast majority of my time on supervisory duties."); Johnson Decl. ¶ 17 ("I spend approximately 15% of my time at work on sales duties like answering sales calls from customers, helping walk-in customers, or providing other sales customer care for our customers."); Toaso Decl. ¶ 14 ("I occasionally answer sales calls when the Inside Sales Representatives are unable to handle all of the calls.  The large majority of my time, however, is spent on my supervisory duties and not on sales calls.").

[41] Smith Decl. ¶ 2.

[42] Smith Decl. ¶ 2 (supervises five Inside Sales Representatives, fifteen Drivers, and one Receptionist); Petry Decl. ¶¶ 5, 7-9 (supervises two Inside Sales Representatives, two Drivers, two Mechanics and an office administrator); Molzan Decl. ¶ ("I supervise a Senior Inside Sales Representative, one Sales Coordinator, two Drivers, and an Equipment Associate."); Guggino Decl. ¶ 2 ("I supervise one Outside Sales Representative, two Drivers, four Mechanics, and one Inside Sales Representative."); Whittemore Decl. ¶¶ 2-3 (at Hudson branch supervises two Inside Sales Representatives, three Drivers, three in-shop Mechanics, one Road Service Mechanic, and one Shop

directly on the customer site and service just one client.[43]  Some Operations Managers are responsible for overseeing the operations of multiple branches without any Branch Manager on site of either location.[44]  Other Operations Managers work at branches that typically have a Branch Manager on site but due to layoffs no longer have any Branch Manager.[45]  Some branches are located in isolated areas and require additional attention and employee coaching from the Operations Manager.[46]

Another significant factor that impacts the job duties of the Operations Manager is the working relationship that the Operations Manager has with his or her Branch Manager.  The working relationship of Operations Managers with their Branch Managers varies based on factors including the type of branch, the time the Branch Manager spends at the branch, and the skills and experience of the Operations Manager and Branch Manager.[47]  The United Rentals declarants describe their working relationships with their Branch Managers as one of trust, teamwork, and cooperation.[48]  The declarants testify that their Branch Managers have hands-off

Foreman; at West Lebanon branch supervises two in-shop Mechanics, two Drivers, one Road Mechanic, and one Shop Manager).

[43] Petry Decl. ¶ 2.

[44] Whittemore Decl. ¶¶ 1-3.

[45] Declaration of Phillip Senior ("Senior Decl.") (attached as Exhibit K to Anthony Aff.) ¶ 1 ("[S]ince early in 2010, I have effectively served as the Acting Branch Manager, as well as continuing to be Operations Manager here. . . . I am responsible for everyone and everything that goes on at my branch.").

[46] Whittemore Decl. ¶¶ 17-18 ("The individuals up in my West Lebanon branch are good workers and really vested in jobs.  They are concerned with what is going on with the company, but due to the location of the branch they often feel isolated from the rest of the branches.  I have to use special care to make them feel part of the United Rentals team.").

[47] Pintoff Dep. 122:14-123:13 (testifying that "it's very hard to characterize the ops managers as doing anything consistently").

[48] Smith Decl. ¶ 19 ("[My Branch Manager] may occasionally have specific requests for me to handle, but for the most part I am making my own decisions for my employees and managing them in the way I determine to be best for the Company."); Petry Decl. ¶ 18 ("When my Branch Manager comes to my branch, he is not there to tell me what to do. . . . We communicate very well and very openly.  He gives me ideas.  I give him ideas.  My Branch Manager and I work together as a team."); Molzan Decl. ¶ 10 ("I do not involve my Branch Manager in a lot of the day-to-day operations and decisions for the branch."); Drenski Decl. ¶ 23 ("[My Branch Manager] trusts my judgment and decisions and has more of a hands-off management style with me."); Guggino Decl. ¶ ("My District Manager does not micromanage me."); Whittemore Decl. ¶¶ 11, 22 ("I would estimate that approximately 95% of the decision making at my branches is mine alone.  For most decisions, I am not checking in with my District Manager or seeking his approval."); Johnson Decl. ¶ 15 ("My Branch Manager is located at my branch, but he does

management styles, which allows each respective Operations Manager to run the operations and manage the employees as the Operations Manager sees fit.[49]  As will be discussed below, the declarants make significant daily decisions on matters of importance regarding their employees and the operations without Branch Manager approval or even Branch Manager involvement.

Another factor that varies among the Operations Managers is their job focus.[50] Some Operations Managers' jobs are more focused on the logistics side of the operation and are responsible for keeping the millions and millions of dollars of equipment "timely flowing through [the] rental process."[51]  Other Operations Managers are sales-focused with "sales responsibilities for managing the sales force" and "making sure that [the] sales reps are calling on the right job sites within the territory, following the sales force process."[52]

### 3. Plaintiff Denies He Performs The Exempt Management Job Duties That Are Shared Among Other Operations Managers

As demonstrated by the declarations as well as the deposition testimony of the United Rentals corporate representative, there are similarities among the Operations Managers. For example, their primary job duties regarding the management of employees and running of the branch operations;[53] their significant participation in hiring, disciplining and terminating of employees;[54] their responsibility for scheduling and directing their employees;[55] their

---

not micromanage me or require me to check in with him on all the day-to-day issues at my branch."); Senior Decl. ¶ 12 ("My District Manager visits my branch on average once a week.  He trusts my judgment and decisions."); Toaso Decl. ¶ 15 ("My Branch Manager is focused on the big picture of the business and is generally hands-off regarding my management at the branch.").

[49] Id.

[50] See, e.g., Drenski Decl. ¶ 1 ("There is another Operations Manager at my location.  Together, we split up the duties of operating the branch.  I manage and supervise two Inside Sales Representatives and one Administrator at the location.  The other Operations Manager deals more with the Drivers and Mechanics.").

[51] Pintoff Dep. 127:22-128:20.

[52] Pintoff Dep. 128:21-129:6.

[53] Smith Decl. ¶¶ 2-3; Petry Decl. ¶ 3; Molzan Decl. ¶¶ 2, 15; Guggino Decl. ¶¶ 2, 18; Whittemore Decl. ¶¶ 1-3; Johnson Decl. ¶¶ 2, 17; Senior Decl. ¶¶ 2, 12; Toaso Decl. ¶ 2.

[54] Smith Decl. ¶¶ 4, 12; Petry Decl. ¶¶ 9, 13; Molzan Decl. ¶¶ 4-6, Drenski Decl. ¶¶ 4-5, 18-19; Guggino Decl. ¶¶ 14-16; Whittemore Decl. ¶ 6; Johnson Decl. ¶¶ 3, 10; Senior Decl. ¶¶ 6, 11; Toaso Decl. ¶¶ 5-6, 12.

responsibility for reviewing and evaluating the work quality of their employees both formally and informally;[55] their responsibility for training their employees;[56] their responsibility for counseling and advising their employees in one-on-one interactions or in team meetings;[57] their authority to approve overtime for nonexempt employees like Inside Sales Representative and Drivers when they deem it necessary;[58] and the substantial differences between their job duties and the job duties of the Inside Sales Representatives they manage.[59]

Significantly, as will be discussed below, Plaintiff *denies* sharing the similarities of the Operations Manager position. As such, the similarities cannot be the basis for a collective

---

[55] Smith Decl. ¶¶ 5-7, Petry Decl.¶¶ 6, 8; Molzan Decl. ¶ 3; Drenski Decl. ¶ 11; Guggino Decl. ¶¶ 5-7; Whittemore Decl. ¶¶ 9, 16; Johnson Decl. ¶¶ 4, 6; Senior Decl. ¶¶ 3-4, 10; Toaso Decl. ¶ 8.

[56] Smith Decl. ¶¶ 9-10; Petry Decl. ¶¶ 5, 12 ("I also like to meet with my employees one-on-one at least once every month or two where I sit down with them and go over their performance. At these meetings, I go over everything with my employees – the good, the bad, and the ugly."); Molzan Decl. ¶¶ 5, 9, 12; Drenski Decl. ¶ 14; Guggino Decl. ¶¶ 8, 12-13; Whittemore Decl. ¶¶ 8, 15; Johnson Decl. ¶ 7; Senior Decl. ¶¶ 5, 7-8; Toaso Decl. ¶¶ 3, 10-11.

[57] Smith Decl. ¶ 8; Petry Decl. ¶ 11; Molzan Decl. ¶ 14; Guggino Decl. ¶ 9; Drenski ¶ 12; Senior Decl. ¶ 9; Toaso Decl. ¶ 7.

[58] Smith Decl. ¶ 11 ("The employees I supervise come to me for career counseling or advice. I respond to their questions and give them guidance on how to succeed at their jobs. I try to foster employee interest in moving into a management positions."); Petry Decl. ¶ 13 ("I do not believe in hollering and screaming at people. My management style is to use positive and open lines of communication."); Drenski Decl. ¶ 2 ("My employees think of me as the go-to person at the branch for their issues. I am the point person for employee issues at my branch including employee benefits."); Guggino Decl. ¶ 17 ("If an employee has a complaint about another employee or other issue in the workplace, the employee comes to me."); Whittemore Decl. ¶ 17 ("I'll also hold meetings if I catch any employee grumblings and complacency. I like to hear about the problems and get them resolved before they become big problems."); Johnson Decl. ¶ 14 ("I help my Inside Sales Representatives and Drivers perform the best they can by counseling and encouraging them."); Senior Decl. ¶ 3 ("If there is a performance issue with an Inside Sales Representative, I am responsible for coaching them, if they need it"); Toaso Decl. ¶ 3 ("I lead regular rental staff meetings and coach [my Inside Sales Representatives and Drivers] in their performance.").

[59] Smith Decl. ¶ 5; Petry Decl.¶ 6; Molzan Decl. ¶ 3; Drenski Decl. ¶ 8; Guggino Decl. ¶ 11; Whittemore Decl. ¶ 5; Johnson Decl. ¶ 4; Senior Decl. ¶ 10; Toaso Decl. ¶ 9.

[60] Smith Decl. ¶ 21; Petry Decl. ¶ 8 ("My job is very different from the Senior Inside Sales Representative and Sales Coordinator that I manage."); Drenski Decl. ¶ 3 ("My job duties are extremely different from the job duties of my Inside Sales Representatives."); Guggino Decl. ¶ 1 ("I have held the position of Inside Sales Coordinator (a previous title used for Inside Sales Representatives) for United Rentals. My job as Operations Manager is very different from my job as an Inside Sales Coordinator."); Whittemore Decl. ¶ 10 ("My job is far more similar to that of a Branch Manager than it is to my Inside Sales Representatives."); Johnson Decl. ¶ 1 ("When I got promoted [from Inside Sales Representative] to my position as Operations Manager, my job duties changed significantly."); Senior Decl. ¶ 13 ("I think that the suggestion that the Operations Manager job is the same as the Senior Inside Sales Representative is absurd. My experience here and my impression of all of the other branches that I deal with is that it is ludicrous to suggest that those positions are the same at any branch."); Toaso Decl. ¶ 2 ("When I was promoted from Inside Sales Representative to Operations Manager, my job duties changed significantly and my responsibilities were increased. I now oversee the day-to-day operations of the branch, parts, service and rental functions and employees at this branch.").

action.  Even if Plaintiff shared the similarities, that fact could not be the basis of a collective action since the similarities are exempt job duties.

### D.  Plaintiff's Job Situation Was Atypical And, As Such, Cannot Be Similarly Situated To Other Operations Managers

#### 1.  Plaintiff's Job Consisted Mostly Of The Duties Of An Inside Sales Representative In Part Because Plaintiff's Branch Had No Inside Sales Representative For Almost All The Time Plaintiff Was An Operations Manager

For a period of time, Plaintiff's branch had two Inside Sales Representatives.[61] For the vast majority of Plaintiff's tenure as Operations Manager, however, there were **no** Inside Sales Representatives, in part because one of the Inside Sales Representative was on leave.[62]  As such, Plaintiff did not supervise or direct any Insides Sales Representatives like other Operations Managers.  Instead, Plaintiff assumed the inside sales duties of the branch.

Plaintiff estimates that he spent approximately 75% of his time engaged in sales work, including sales calls and executing contracts.[63]  Plaintiff also estimates that he spent eight hours each day at his computer on the front sales counter.[64]  Unlike Plaintiff, many Operations Managers have their own office at the branch and do no spend much (or any) time on the sales counter with the Inside Sales Representatives.[65]  In addition, other Operations Managers testified that even when they are engaged in sales duties, they are still monitoring their employees and overseeing the running of their branch operations.[66]

Plaintiff bluntly admitted in deposition that "[m]y job duties never changed when I became the Operations Manager in Manchester.  I was doing the same daily activities when I

---

[61] Aros Dep. 95:14-20.
[62] Aros Dep. 95:5-13.
[63] Aros Dep. 94:9-15 (Q: "So roughly 75 percent of your time was spent engaged in sales?"  A: "Yes, sir.").
[64] Aros Dep. 41:19-42:2.
[65] Smith Decl. ¶ 21; Petry Decl. ¶ 4; Drenski Decl. ¶ 13; Whittemore Decl. ¶ 20; Johnson Decl. ¶ 17.
[66] Johnson Decl. ¶ 17; Molzan Decl. ¶ 8; Dresnki Decl. ¶ 13; Guggino Decl. ¶ 5; Whittemore Decl. ¶ 19; Senior Decl. ¶ 4; Toaso Decl. ¶ 14.

was senior inside sales and inside sales."[67]  Moreover, when Plaintiff was shown a copy of the Operations Manager job description during his deposition, Plaintiff denied that he performed many of the listed essential duties and responsibilities.[68]

At other points in the deposition, Plaintiff further testified that he did not perform the job duties of an Operations Manager as described in the job description.  Plaintiff did not manage other employees.[69]  Plaintiff did not authorize overtime for any employees.[70]  Plaintiff did not have any authority for hiring or firing employees.[71]  Plaintiff also did not direct employees or make employee schedules other than the dispatching of the Drivers.[72]  Plaintiff, however, could not make daily adjustments of his Drivers' schedules, because their union contract required two weeks of lead time to change their hours.[73]  Plaintiff also never counseled any employees and only reprimanded employees for safety infractions.[74]  Plaintiff did not review his Drivers' logs for company compliance or Department of Transportation compliance; Plaintiff only made photocopies of the logs and put them in the mail.[75]

---

[67] Aros Dep. 86:1-6.
[68] Compare Aros Dep. Exhibit 2 (Anthony Aff. Ex. A, Tab 1), Operations Manager job description (listing "Essential Duties And Responsibilities") and Aros Dep. 107:7-109:21 (testifying he did not assist Branch Manager in preparation of reports, including profit and loss statements); Aros Dep. 109:22-110:2 (testifying he did not "have any involvement with hiring or firing"); Aros Dep. 110:3-111:7 (testifying that he prepared performance reviews but never sat down with the employees to go over the reviews, because his Branch Manager did that); Aros Dep. 115:7-18 (testifying that he never did any training of employees other than safety training because "the man I would have trained was out for the majority of time that I was operations manager."); Aros Dep. 118:1-3 (testifying that he had no authority to approve employee requests for days off); Aros Dep. 119:20-120:2 (testifying that he did not supervise the processing of rental contracts and invoices, because he did that work by himself).
[69] Aros Dep. 38:19-20.
[70] Aros Dep. 39:5-10.
[71] Declaration of Andreas Aros ("Aros Decl.") ¶ 9.
[72] Aros Dep. 38:21-39:4.
[73] Aros Dep. 71:16-22.
[74] Aros Dep. 40:9-14.
[75] Aros Dep. 73:5-74:6.

### 2. Unlike Other Operations Managers, Plaintiff Lacked Autonomy To Run The Branch Operations, Because Plaintiff's Branch Manager Micro-Managed Him

Plaintiff describes his Branch Manager as a "micromanager . . . [b]ecause everything that occurred through the store would be second-guessed on a day-to-day basis."[76] Indeed, Plaintiff believed he did not have authority to make any decisions regarding the day-to-day operations of the branch without getting approval from his Branch Manager, because his Branch Manager "required" him to do so.[77] For example, Plaintiff's Branch Manager required Plaintiff to contact him regarding all price adjustments to rental contracts.[78] For a significant portion of Plaintiff's time as Operations Manager, his "micro-managing" Branch Manager was on site every day of the week.[79] Plaintiff disliked working for his Branch Manager so much that he even referred to him as a "douche" in an email Plaintiff sent to a co-worker.[80]

### 3. Plaintiff Failed To Perform The Job Duties Of An Operations Manager

Plaintiff admits he does not even know what the duties are for Operations Managers.[81] Consequently, Plaintiff neglected to perform his job duties. One of Plaintiff's job duties as Operations Manager was to ensure that company policies and procedures were administered at the branch, including the company e-mail and computer policy.[82] As the United Rentals company representative testified: "if an operations manager sees an employee at a computer with inappropriate information on the screen . . . I would expect that operations

---

[76] Aros Dep. 67:4-13.
[77] Aros Dep. 63:11-64:14.
[78] Aros Dep. 69:8-23.
[79] Aros Dep. 63:1-4.
[80] Aros Dep. 152:1-14; Aros Dep. Ex. 10 (Anthony Aff. Ex. A, Tab 2), August 11, 2009 email from Aros at D0027.
[81] Aros Dep. 85:9-12 (Q: "Do you know if all operations managers performed the same duties as you did?" A: "Don't know what the duties are for the operations managers though.").
[82] Pintoff Dep. 68:21-70:19; Pintoff Dep. Ex. 4 (Anthony Aff. Ex. B, Tab 1), Policy and Procedure Bulletin: Internet, E-Mail, Electronic Communications and Information Security at D0213-D0220.

manager to take appropriate action to make sure that [the e-mail and computer] policy was administered and the employee was addressed."[83]

Plaintiff, however, failed to take any action when employees at his branch violated the company e-mail and computer policy. Indeed, Plaintiff admits that he exchanged graphic pornographic materials on a "[p]retty regular" basis with a United Rentals Driver over company email during work.[84] Such activity was a clear violation of the company policy. Even though Plaintiff was supposed to be enforcing the company policies and supervising this individual, Plaintiff never disciplined the Driver for repeatedly sending the graphic pornography to Plaintiff's company email address.[85] Moreover, Plaintiff failed to condemn – or even mention – the graphic pornography on the Driver's performance evaluation.[86] Put simply, Plaintiff was not performing his job of managing employees.

In addition, Plaintiff spent work time (1) searching for and applying to other jobs;[87] (2) sending pornographic emails to United Rentals employees;[88] (3) surfing internet sites like ESPN;[89] (4) doing personal banking online;[90] (5) pulling images and stories off the internet and sending them to friends;[91] and (6) preparing his girlfriend's cover letters and resume and faxing them to prospective employers using United Rentals' fax machines.[92] Put simply, instead of performing his job, Plaintiff engaged in extensive personal activities, most of which were in violation of United Rentals' policies.

---

[83] Pintoff Dep. 70:13-19.
[84] Aros Dep. 132:8-133:6; 136:8-22.
[85] Aros Dep. 133:7-9.
[86] Aros Dep. 134:21-135:13.
[87] Aros Dep. 125:6-17.
[88] Aros Dep. 137:3-16.
[89] Aros Dep. 129:10-130:19 (Q. "During 2009, would it surprise you that from your computer there were 81,000 hits on ESPN?" A. "I wouldn't know that number, sir." Q: "But I'm asking you if that would surprise you that it was that many discreet hits?" A. "Of course." Q. "It would?" A. "It's a large number, sir.").
[90] Aros Dep. 137:24-138:4.
[91] Aros Dep. 140:12-141:4.
[92] Aros Dep. 128:1-18.

### E. Plaintiff Submits Just One Affidavit, And The Affidavit Is Not Credible

Plaintiff failed to obtain *any* declarations other than his own. Plaintiff overcompensates for this dearth of evidentiary support by blatantly embellishing his knowledge of four other Operations Managers in an attempt to convince the Court to certify a national class to which he is not similarly situated. Plaintiff declares – in multiple places throughout his motion as well as in his declaration – that he observed four other Operations Managers who all performed the same job duties as him. (See Plaintiff's Motion, pp. 7, 10, 11; Aros Decl. ¶ 7.) Yet, in deposition, Plaintiff admits that his observation of these four Operations Managers was at best transitory.[93] For the first Operations Manager (John Duddy), Plaintiff admits he worked in Duddy's branch for only "a couple days."[94] For the second Operations Manager, Plaintiff admits he was at the branch for "half hour, forty-five minutes . . . [to s]ee the store, stop in and say hi to the employees."[95] For the third Operations Manager, Plaintiff admits that he observed the Operations Manager working for "[t]en minutes, at the most."[96] For the fourth Operations Manager, Plaintiff admits he observed the Operations Manager working for only "[t]wenty minutes."[97] These admissions impeach Plaintiff's declaration regarding his knowledge of other Operations Managers.

Because Plaintiff admits he spent *very* little time "observing" these four Operations Managers, the Court should not credit Plaintiff's self-serving statements. Indeed, it is impossible to observe the full breadth of an Operations Managers' job duties by watching them for forty-five minutes, let alone ten or twenty minutes. In such a short time, Plaintiff could not possibly observe whether the Operations Manager made hiring or firing decisions, or counseled

---

[93] Aros Dep. 74:7-81:1.
[94] Aros Dep. 74:7-75:23.
[95] Aros Dep. 76:5-18.
[96] Aros Dep. 79:13-23.
[97] Aros Dep. 80:3-21.

employees, or disciplined employees, or prepared schedules for their employees, or authorized overtime for nonexempt employees, or analyzed rental reports and profit and loss statements, or ran the day-to-day operations of the branch. Plaintiff also could not have observed in so little time the relationship between the Operations Managers and their respective Branch Managers to determine whether it was one of trust, teamwork and cooperation (as all the United Rentals' declarants attest to enjoying) or one of micromanagement, constant monitoring and required approvals (as Plaintiff alleges he experienced). Consequently, Plaintiff's evidence regarding the job duties of Operations Managers should be limited to his own experiences, which as discussed previously, are atypical and not similarly situated to other Operations Managers.

Moreover, as discussed above, the only Operations Manager whom Plaintiff "observed" for more than 10-45 minutes was John Duddy. Yet, Plaintiff did not secure a declaration from John Duddy even though Plaintiff contacted him about this lawsuit and gave Mr. Duddy his attorney's contact information.[98] In addition, John Duddy has not opted into this lawsuit.

### F. The Differences Between Plaintiff's Job Duties And The Putative Class Members' Job Duties Cannot Be Determined On A Collective Basis

United Rentals cannot track what Operations Managers are doing on a day-to-day basis.[99] The United Rentals company representative agreed that there would be no way to determine how much time the Plaintiff spent on any of his job duties without specifically asking Plaintiff or somebody who observed him.[100] The same would be true for all the other Operations Managers. Consequently, the only way to determine how much time each class member spent

---

[98] Aros Dep. 17:17-18:20.
[99] Pintoff Dep. 135:8-137:12 (testifying that it was be "very challenging" to track what Operations Managers do on a day-to-day basis and that the only way to determine how much time Plaintiff spent on his job duties would be to ask Plaintiff directly or someone who was observing his job duties day-to-day).
[100] Pintoff Dep. 137:3-14.

on exempt duties like management and general business administration versus nonexempt duties like inside sales calls would be to ask that individual or somebody who regularly observed him or her.

### G. The Lack Of Any Declarations From The Punitive Class Or Opt-Ins To This Case Demonstrates That The Putative Class Has No Interest In This Lawsuit

This case has been pending for approximately six months, during which time Plaintiff's counsel has advertised this case on its website and invited other Operations Managers to join the case.[101] The website includes contact information for Plaintiff's counsel and a link to an opt-in form for putative class members to fill out and send to Plaintiff's counsel.[102] Six months later, no one from the putative class has opted into this lawsuit.

In addition, Plaintiff contacted two former Operations Managers.[103] Neither individual opted into this lawsuit. Neither individual submitted a declaration. Plaintiff has not obtained any declaration from any putative class member to submit in support of his motion. There is no interest from the putative class in this lawsuit.

### III. <u>ARGUMENT</u>

"Court-authorized notice in this case would function as little more than a fishing expedition." <u>Rappaport v. Embarq Mgmt. Co.</u>, No. 6:07-CV-468, 2007 WL 4482581, at *4-5 (M.D. Fla. Dec. 18, 2007)[104] (denying conditional certification of national putative class of inside sales agents because "[t]he six affidavits Plaintiffs have submitted do not provide any support for this extraordinary request."). Plaintiff's burden of proof at the conditional certification stage of litigation under 29 U.S.C. § 216(b) is not negligible, and conditional certification is not free for the asking. "The power to authorize notice must . . . be exercised with discretion and only in

---

[101] Anthony Aff. ¶ 32 (located at: http://www.hayberlawfirm.com/classactions/unitedrentals.html).
[102] Anthony Aff. ¶ 32.
[103] Aros Dep. 15:13-18:20.
[104] Unpublished cases are attached in alphabetical order at Exhibit L, Tabs 1-18, Anthony Aff.

appropriate cases." <u>Holt v. Rite Aid Corp.</u>, 333 F. Supp. 2d 1265, 1268 (M.D. Ala. 2004) (denying conditional certification noting that "courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation.") (internal quotations omitted). Moreover, a plaintiff's burden at this stage "is not 'invisible' and cannot be based on the conclusory allegations of a few employees." <u>Gomez v. United Forming, Inc.</u>, No. 6:09-cv-576-Orl-31GJK, 2009 WL 3367165, at *2 (M.D. Fla. Oct 15, 2009) (denying conditional certification).

The collective action mechanism should be employed only in cases involving "common issues of law and fact arising from the same alleged . . . activity," such that resolution of common issues in one proceeding would promote efficiency and judicial economy. <u>Hoffman-La Roche Inc. v. Sperling</u>, 493 U.S. 165, 169 (1989). "[D]istrict courts in this circuit have typically undertaken a two-stage inquiry." <u>Hendricks v. J.P. Morgan Chase Bank, N.A</u>, No. 3:09-CV-613 (JCH), 2009 WL 5170180, at *5 (D. Conn. Dec. 15, 2009) (internal quotations omitted). At this initial stage of the process, Plaintiff must demonstrate that the proposed members of the class are similarly situated. <u>See id.</u>

In this case, United Rentals submits declarations from Operations Managers that refute and undermine Plaintiff's allegations. This evidence is probative of whether the putative class is similarly situated and, as such, should be considered. <u>See id.</u> ("[b]ecause of extensive discovery that has already taken place . . . [t]he Court agrees that it should determine whether to certify this collective action based on the full evidence before it."); <u>see also Holt</u>, 333 F. Supp. 2d at 1274 (it is "appropriate to carefully consider the submissions of the parties with respect to the collective action allegations" where "the court has been presented with fairly extensive evidence on the issue of whether putative class members are similarly situated").

United Rentals' extensive evidence speaks to the ultimate question presented to this Court by Plaintiff's motion: whether this case can be treated as a collective action. As one court put it, "neither the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if [the Court] were to overlook facts which generally suggest that a collective action is improper." West v. Border Foods, Inc., No. 05-2525 (DWF/RLE), 2006 WL 1892527, at *7 (D. Minn. July 10, 2006) (denying motion for conditional certification). As another court noted, "[i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (denying conditional certification); see also Basco v. Wal-Mart Stores, Inc., No. Civ.A. 00-3184, 2004 WL 1497709, at *5 (E.D. La. July 2, 2004) ("[t]o create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for same prior to its certification would be an exercise in futility and wasted resources for all parties involved").

### A. Plaintiff's Motion Fails, Because Plaintiff Failed To File His Consent To This Action As Required By The FLSA

The statutory language of the FLSA is clear that when individuals file a collective action under § 216(b), *all* plaintiffs must file a consent to suit with the court:

> No employee shall be a party plaintiff . . . unless he gives his consent in writing to become such a party and consent is filed in the court in which such action is brought.

Id. It is well settled that this requirement applies to named plaintiffs, as well as individuals who may wish to opt-in to the action. See, e.g., Harkins v. Riverboat Servs., Inc., 385 F.3d 1099, 1101 (7th Cir. 2004) (interpreting statute literally to require named plaintiffs to file consent with court and noting that "[n]o other appellate decision does otherwise"); Lee v. Vance Executive

Production, Inc., 7 Fed. Appx. 160, 166-67 (4th Cir. 2001); Gonzalez v. El Acajutla Restaurant, Inc., No. CV 04-1515, 2007 WL 869583, at *5 (E.D.N.Y. Mar. 20, 2007) ("The case law, like the statute itself, requires named plaintiffs as well as others to submit a written consent to join in a collective action under the FLSA, and is not satisfied by the filing of the complaint itself."); McLaughlin v. Boston Harbor Cruises, Inc., No. 03-10905, 2006 WL 1998629, at *2 (D. Mass. July 17, 2006) ("It may seem redundant to require a named plaintiff to file a separate consent . . . However, redundant or not, there is nothing ambiguous about the statute: a collective action by a named plaintiff is not commenced until she has filed her written consent in addition to filing the complaint.").

Here, Plaintiff has not filed a written consent form with the Court. The appearance of his name in the caption does not excuse him from this statutory requirement. The law prevents Plaintiff from pursuing a collective action pursuant to § 216(b) without his consent form having been filed. See El v. Potter, No. 01 Civ. 6125, 2004 WL 2793166, at *9 (S.D.N.Y. Dec. 6, 2004) ("all plaintiffs, including named plaintiffs, must file written consents in order to begin their lawsuits" under § 216(b) of the FLSA). Without the requisite consent, there is no basis for a collective action and Plaintiff should not be permitted to represent an action on behalf of a class to which no one has opted in. Even if Plaintiff subsequently files his consent, such an action should not be considered to cure the procedural defect since Plaintiff's motion was not ripe at the time of filing.

Notably, Plaintiff seeks to certify a *national* class of *hundreds* of Operations Managers at Defendants' significant expense and the expense of this Court's time and resources without fulfilling his own minimal, but necessary, procedural requirement. Plaintiff's failure to file his own consent form is not only a procedural defect but also is indicative of Plaintiff's

complete lack of due diligence to determine if there is a basis for proceeding as a collective action.

## B. Plaintiff's Unique Job Situation Is Not Representative Of Operations Managers

### 1. Plaintiff Disavows The Operations Manager Job Description And Even Testifies That He Was Performing The Job Of An Inside Sales Representative

This district has held that a misclassification case should not be conditionally certified when, like here, a plaintiff claims to be nonexempt by expressly disavowing the tasks enumerated in a job description for an exempt position. See Mike v. Safeco Ins. Co. of Am., 274 F. Supp. 2d 216, 221 (D. Conn. 2003) (denying conditional certification). In such a case, judging the merits of the claim would be "extremely individual and fact-intensive" since the Court would have to engage in individual inquiries in order to determine if each potential plaintiff possessed the same job responsibilities as Plaintiff. See id. at 219.

Plaintiff attempts in vain to avoid the holding in Mike by claiming that the Operations Manager "job description accurately summarizes the duties Plaintiff performed as an OM, even if it did not describe his duties precisely." (Motion, p. 14.) Plaintiff even cites to a small snippet early in Plaintiff's deposition where he testified that the Operations Manager job description summarized his duties. Id. Yet, as highlighted above, Plaintiff's subsequent deposition testimony impeached that conclusory statement as he repeatedly denied performing several essential job functions of the Operations Manager position.[105] Moreover, Plaintiff's declaration disavows several of the essential job functions of the Operations Manager position.[106] Most notably, Plaintiff did not "have any involvement with hiring or firing" and had "no managerial responsibilities."[107] Plaintiff also lacked authority to run the day-to-day operations of

---

[105] See supra fns. 68-75.
[106] Aros Decl. ¶¶ 8-12.
[107] Aros Dep. 98:6-99:4. See also Aros Decl. ¶ 9; Complaint ¶¶ 18, 20.

the branch, because his Branch Manager was a micro-manager who "required" that Plaintiff get his approval for all decisions related to the operations.[108]

Significantly, Plaintiff even went so far as to testify that he was not performing the job duties of an exempt Operations Manager, but instead was performing the job duties of a nonexempt Inside Sales Representative. See Aros Dep. 86:1-6 ("My job duties never changed when I became the operations manager in Manchester. I was doing the same daily activities when I was senior inside sales and inside sales."). In other words, Plaintiff claims he was <u>not</u> an Operations Manager as countenanced by United Rentals but was an Inside Sales Representative. Consequently, the holding in <u>Mike</u> applies to this case and, as such, conditional certification should be denied. See <u>Mike</u> at 221 ("Mike expressly disavows this job description and claims that, on a task-to-task, day-to-day basis, he spent the balance of his time performing non-administrative functions despite the fact that his job description calls for him to perform some administrative functions.").

## 2. United Rentals' Declarations Establish That The Job Duties Of Operations Managers Are Significantly Different From The Job Duties Of Plaintiff And Other Inside Sales Representatives

This Court denied certification in another case where the Plaintiffs alleged that they performed "virtually the same job functions and responsibilities" of lower-level employees, but declarations from the potential class members proved otherwise. See <u>Hendricks</u>, 2009 WL 5170180, at *7 ("The fact that many of the potential class members in this case spent significant amounts of time supervising overtime-eligible fund accountants undermines [the Plaintiffs'] contention that the potential class members 'virtually perform[ed] the same job functions and responsibilities' as such lower-level fund accountants.'").

---

[108] Aros Dep. 63:11-64:14.

22

Similar to the Plaintiffs in <u>Hendricks</u>, Plaintiff here alleges that he was not performing the job duties of the higher-level Operations Manager, but instead was performing the job duties of a lower-level Inside Sales Representative. Also similar to <u>Hendricks</u>, the potential class members here attest to supervising overtime-eligible Inside Sales Representatives and other nonexempt staff. Moreover, the putative class consistently testified that their job duties are markedly different in legally significant ways than the job duties of Plaintiff and the nonexempt Inside Sales Representatives they manage.[109] Consequently, for this additional reason, this case is not amenable for class certification. <u>See</u> <u>Hendricks</u>, at *7 (finding that a similar discrepancy of job and supervisory responsibilities between the Plaintiffs and the putative class members "strongly bears on the court's determination that the potential class members are not similarly situated.").

Plaintiff attempts in vain to avoid the holding in <u>Hendricks</u> – as he attempted to do with the holding in <u>Mike</u> – by claiming that the plaintiffs in <u>Hendricks</u> had completed discovery and the discovery in this case is "just beginning". (Motion, p. 15.) Yet, this case has been pending for approximately six months, and the parties have already exchanged thousands of pages of documents.[110] Moreover, Plaintiff could have sought to take more depositions but instead noticed only one.[111] Finally, and most significantly, the Court's similarly situated analysis in <u>Hendricks</u> applies here regardless of whether the Court employs a traditional "first-tier" analysis or a more rigorous one in light of all the evidence presented by United Rentals.

---

[109] <u>See, e.g.</u>, Senior Decl. ¶ 13 ("I think that the suggestion that the Operations Manager job is the same as the Senior Inside Sales Representative is absurd. My experience here and my impression of all of the other branches that I deal with is that it is ludicrous to suggest that those positions are the same at any branch.").
[110] Anthony Aff. ¶ 33.
[111] Anthony Aff. ¶ 33.

**3. Plaintiff's Poor Performance And Personal Deviations At Work Cannot Turn His Exempt Job Into A Non-Exempt Job**

Further complicating the individualized issues in this case specific to Plaintiff is the legal principle that an employee cannot reclassify themselves by failing to perform the exempt duties as required by the job. See, e.g., Ramirez v. Yosemite Water Co., 20 Cal. 4th 785, 802 (Cal. 1999) (holding that the court should consider not only how the employee actually spends his or her time, but also whether the employee's practice diverges from the employer's realistic expectations in determining the employer's responsibility for overtime hours); see also Murray v. Stuckey's, Inc., 939 F.2d 614, 618 (8th Cir. 1991) (manager's delegation of exempt duties did not change his exempt status); Stein v. J.C. Penny Co., 557 F. Supp. 398, 402, 405 (W.D. Tenn. 1983) ("Generally, under any of the various court interpretations, plaintiff's primary duty was management. His failure to properly apportion the work, as was within his discretion to do, does not convert an exempt job into a non-exempt one.").

In the instant case, Plaintiff testified that he failed to discipline or counsel his employees. Plaintiff even failed to discipline his employees for sending graphic pornographic emails, which was an obvious violation of United Rentals policies. Plaintiff also spent work time performing personal tasks like applying for jobs, emailing pornography to United Rentals employees, surfing the internet, and faxing resumes and cover letters for his girlfriend. See Whittlesey v. Union Carbide Corp., 567 F. Supp. 1320, 1325 (S.D.N.Y. 1983) (in the context of analysis of the "bona fide executive" exemption under ADEA, holding that "an unresourceful employee should not benefit in this regard from his failure to perform adequately the duties that are expected of him . . . an employee would not escape the exemption because [of] his lack of energy, imagination or judgment"). Plaintiff's failure to discipline or counsel employees was in contravention of United Rentals' expectations of what was required for the Operations Manager

job.  When Plaintiff spent time at work doing personal activities, he did so at the expense of performing his job duties.  Consequently, Plaintiff's failure to perform his job as expected would be another individualized issue that makes conditional certification inappropriate.

**C.  United Rentals' Declarations Establish That Operations Managers' Job Duties Vary**

Because Plaintiff fails to offer any collective proof that Operations Managers are improperly classified, to determine the exemption question "the court would have to inquire . . . as to the daily tasks of each putative collective action member to determine whether they are similarly situated to the persons identified by the Plaintiffs, and then, on the merits, whether they had suffered an FLSA violation because they were not eligible for overtime compensation." Holt, 333 F. Supp. 2d at 1271 (denying conditional certification of a national and regional collective action); see also Diaz v. Electronics Boutique of Am., Inc., No. 04-CV-0840E(Sr), 2005 U.S. Dist. LEXIS 30382, at *13-14 (W.D.N.Y. Oct. 13, 2005) (denying conditional certification because although plaintiffs share the same job description, their responsibilities may differ); Dean v. Priceline.com, Inc., No. 3:00CV1273 (DJS), 2001 U.S. Dist. LEXIS 24982, at *7-8 (D. Conn. Mar. 9, 2001) (holding collective action treatment to be inappropriate given the "extremely individual and fact-intensive" determination required by the exemption analysis); Harris v. Fee Transp. Servs., Inc., No. 3:05CV0077-P, 2006 WL 1994586, at *5 (N.D. Tex. May 15, 2006) (collecting cases; noting that "multiple courts in this circuit and elsewhere have refused to conditionally certify a class at the first stage of the analysis when the determination of whether certain employees were improperly classified as exempt would require a highly individualized inquiry"); Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 499 (D.N.J. 2000) (holding collective treatment improper due to individualized nature of the inquiry required by exemption analysis); Donihoo v. Dallas Airmotive, Inc., No. 3:97-CV-0109-P, 1998

U.S. Dist. LEXIS 2318, at *4-5 (N.D. Tex. Feb. 23, 1998) ("In deciding whether an employee fits into one of the many exempt categories delineated by the FLSA, the Court must conduct an inquiry into the employee's specific job duties.").

Although the Court should not judge at this stage the merits of Plaintiff's FLSA claims, a review of the putative class members' job duties in light of the FSLA exemptions at issue demonstrates that Plaintiff and the putative class are not similarly situated in the areas of their jobs which are relevant to the FLSA misclassification inquiry. In this case, at least four separate exemptions under the FLSA or state law may apply to each putative class member: the executive exemption, the administrative exemption, the highly compensated employee exemption, and the combination exemption. Operations Managers jobs vary due to many factors including, but not limited to, the needs of United Rentals customers, the staffing at their branch, the equipment rented, the presence of other Operations Managers at their branch, and the presence of a Branch Manager at their branch.

Plaintiff's allegations and testimony essentially amount to a claim that United Rentals promotes employees to the position of Operations Managers, with all the salary and benefit increases, but does not require them to perform the job duties of an Operations Manager and instead has them perform the job duties of an Inside Sales Representative. First, such a theory makes little business sense, because Operations Managers are "a highly paid role within [United Rentals], one of the few roles that are eligible for profit sharing and bonuses at [the] branches."[112] Second, and more importantly for this motion, the declarations submitted by United Rentals demonstrate that Operations Managers *do* perform the job duties of Operations Managers, not the job duties of Inside Sales Representatives.

---

[112] Pintoff Dep. 46:24-47:2.

Consequently, it would require a highly individualized inquiry to determine if other putative class members – due to some specific reason pertaining to their personal work situation – are not performing the job duties of an Operations Manager. The only way to determine how much time Operations Managers spent on their various job duties would be to ask them or somebody who observed them every day.[113]

### D. Plaintiff Fails To Present Any Evidence That A Viable Collective Action Exists

#### 1. Plaintiff's Own Affidavit Containing Conclusory Assertions That Other Workers Are Similarly Situated Is Insufficient To Satisfy His Burden

Federal courts have repeatedly declined collective action certification where, like here, a plaintiff's assertions are conclusory or lack an evidentiary foundation. See, e.g., Haynes v. Singer, 696 F.2d 884, 887-88 (11th Cir. 1983); Ulysse v. Divosta Bldg. Corp., No. 06-80338-CIV-RYSKAMP/VITUNAC, 2006 WL 3618449, at *2 (S.D. Fla. Dec. 7, 2006) (plaintiff's "affidavit is not probative of the similarly situated question as it merely offers conclusory allegations and self-serving personal beliefs about purported claims of identified third parties"); Trinh v. JP Morgan Chase & Co., No. 07-CV-1666 W (WMC), 2008 U.S. Dist. LEXIS 33016, at *10 (S.D. Cal. Apr. 22, 2008) ("[p]laintiffs provide no real evidence, beyond their speculative beliefs, suggesting that all JP Morgan loan officers . . . receive the same compensation and are required to work in the same manner"); Mares v. Caesars Entertainment, Inc., No. 4:06-cv-0060-JDT-WGH, 2007 WL 118877, at *3 (S.D. Md. Jan. 10, 2007) ("[u]nsupported allegations are insufficient to establish that the putative plaintiffs are similarly situated") (citations omitted).

Significantly, Plaintiff here "offered no evidence from proposed class members themselves as to the day-to-day nature of their positions." Hendricks, 2009 WL 5170180, at *10. Instead, Plaintiff offers nothing more than his own self-serving conclusory statement that all

---

[113] Pintoff Dep. 137:3-14 (testifying that the only way to determine how much time Plaintiff spent on his job duties would be to ask Plaintiff directly or someone who was observing his job duties day-to-day).

Operations Managers across the country perform the same job duties he performed. Yet, incredibly, Plaintiff admits he does not even know what the job duties are for Operations Managers. See Aros Dep. 85:9-12 (Q: "Do you know if all operations managers performed the same duties as you did?" A: "Don't know what the duties are for the operations managers though.").[114] As such, Plaintiff bases his sweeping statements on his own atypical experience and his transitory "observation" of four Operations Managers that he admits lasted at most a couple days but more typically lasted a matter of minutes (for three of the four individuals, Plaintiff's "observation" lasted for just **10 minutes, 20 minutes and 30-45 minutes** respectively).

If Plaintiff's scant evidence and conclusory assertions lead to conditional class certification, the "similarly situated" requirement would be rendered essentially meaningless. Approving Plaintiff's extraordinary request to give notice to a national class of hundreds of individuals based on Plaintiff's two-page affidavit when Plaintiff has not even opted into this case subverts the goals of collective actions. "[E]mployers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expenses." Lentz v. Spanky's Restaurant II, Inc., 491 F. Supp. 2d 663 (N.D. Tex. 2007) (denying conditional certification).

### 2. Plaintiff Has No Evidence Of A Common Policy Or Plan That *Violated* The Law

For a case to proceed as a collective action, Plaintiff must demonstrate that he and other potential plaintiffs "together were victims of a common policy or plan that **violated** the law." Mike, 274 F. Supp. 2d 216, 221 (citing cases) (emphasis added) ("The merits of [Plaintiff's] claim will turn upon evidence relating to [Plaintiff's] day-to-day tasks, and not upon

---

[114] See also Aros Dep. 98:14-17 (testifying that he does not know if other Operations Managers had job duties related to hiring and firing of employees).

any [] company policy or decision.").  Plaintiff here has no such factual nexus for a collective action.  See id. at 220-21 (finding that plaintiff "has not provided evidence of a common thread binding his proposed class of employees").

Plaintiff made no effort to show the extent to which the proposed class members will rely on common evidence at trial.  In short, "the proof in this case is specific to the individual."  Mike, 274 F. Supp. 2d 216, 221.  Because Plaintiff disavows the Operations Manager job description, the individualized proof required by the applicable FLSA exemptions would not allow the issues in this case to be resolved through representational evidence, making the case tantamount to conducting multiple trials on the merits, which is the antithesis of a collective action.  See id.; see also Trinh, 2008 U.S. Dist. LEXIS 33016, at *18 (refusing to certify a collective action in the absence of common evidence); Holt, 333 F. Supp. 2d at 1272 (denying collective action to store managers and assistant store managers due to an ability to use representational proof).

The disparate facts and issues addressed above defeat Plaintiff's conclusory – and unsupported – allegations that the putative class members are "similarly situated".  See Diaz, 2005 U.S. Dist. LEXIS 30382, at *19 n. 8 (denying certification where "significant differences are apparent at the outset and discovery cannot resolve the defects in plaintiffs' claims"); Morisky, 111 F. Supp. 2d 493, 499 ("litigating this case as a collective action would be anything but efficient . . . the exempt or non-exempt status of potentially hundreds of employees would need to be determined on a job-by-job, or more likely, an employee-by-employee basis.").

Plaintiff cannot point to any *legally relevant* similarity shared among the putative class of Operations Managers.  Instead, Plaintiff seeks to distract this Court by listing – for the vast majority of his fact section – all the legally *irrelevant* similarities, including United Rentals'

management structure, goal of providing superior and consistent customer service, training programs, and job posting and offer letter procedures. (Motion, pp. 2-5.) These common policies and programs are not a factual nexus for a collective action, because they are not "a common policy or plan that **violated** the law." Mike, 274 F. Supp. 2d 216, 221 (citing cases) (emphasis added). Moreover, these common policies and similarities are not relevant to the job duties of the Operations Managers.

Plaintiff also alleges as collective proof that United Rentals classified all Operations Managers as exempt. (Motion, pp. 6, 10.) Yet, numerous courts have repeatedly rejected the theory that a universal policy and practice of classifying a group of employees as exempt can be a basis for proceeding collectively. See e.g., Trinh, 2008 U.S. Dist. LEXIS 33016, at *10 n.2 (following court decisions that have held that "merely alleging that a class of employees was wrongly designated 'exempt' does not constitute a showing of an unlawful institution-wide policy"); Morisky, 111 F. Supp. 2d at 498 (denying certification where "what plaintiffs are really challenging here is defendant's determination that they are exempt under the FLSA"); Dean, 2001 U.S. Dist. LEXIS 24982, at *5 (rejecting the claim that "the putative class members are similarly situated because all were denied overtime pay as a result of being misclassified as exempt").[115]

---

[115] Significantly, the first case Plaintiff cites in argument for the proposition that a universal exempt classification "without much more" justifies conditional certification actually holds that a ***factual nexus*** among plaintiffs of an ***illegal*** pay practice is necessary in addition to a universal exemption classification policy. (Motion p. 10) (citing Cano v. Four M Food Corp., No. 08 Civ. 3005 (JFB) (AKT), 2009 WL 5710143, at *7 (E.D.N.Y. Feb. 3, 2009) ("As long as [the workers] were all similarly situated *with respect to being subject to the same policy* of being denied overtime compensation, **and there exists a factual nexus among the plaintiffs**, conditional certification is appropriate) (emphasis in italics in original; emphasis in bold and underlined added). Moreover, the facts in Cano, much like the facts in the other cases Plaintiff cites, are easily distinguishable from the present action. Unlike the present case, in Cano, there were supporting affidavits from *three* plaintiffs and *two* opt-ins. Id. at *1. Also unlike the present case, the exemption defenses, which require individualized inquiries, were not at issue in Cano as the class members were low-level, hourly grocery store workers who bagged groceries, stocked shelves and cleaned bathrooms. Id. at *2. Finally, unlike Plaintiff here, the plaintiffs in Cano "sufficiently alleged that all of the prospective plaintiffs were subjected to the same ***illegal*** pay practice" that required hourly, nonexempt employees to work more than forty hours without paying overtime. Id. at *7 (emphasis added).

Next, Plaintiff alleges that the Operations Managers share the same job description. (Motion, p. 6.) Yet, the job description clearly represents the duties of an exempt job. Even assuming the Operations Manager job description represented a nonexempt job, it *still* could not be the common proof in this case since Plaintiff repeatedly disavows the job description applied to him and even asserts he was essentially an Inside Sales Representative with the title of Operations Manager.

Next, Plaintiff alleges that the Operations Managers have the same primary job duties. (Motion, pp. 6-7.) Yet, as discussed above, Plaintiff has no credible evidence to support this conclusory statement. Plaintiff has no affidavits or statements from other putative class members. Moreover, Plaintiff's deposition testimony and own affidavit – the only one submitted by Plaintiff – establishes that he did not share the same primary job duties with Operations Managers.

Next, Plaintiff alleges that a company memorandum from Carolyn Burnett establishes that Operations Managers perform the same job duties. (Motion, p. 7). Plaintiff conveniently neglects to mention that the memorandum, like the Operations Manager job description, represents the duties of an exempt job. (Declaration of Molly A. Brooks, Exhibit J, Bates stamped D8028-8030.) Significantly, the memorandum, like the job description, cannot be the common proof in this case since Plaintiff did not perform the listed job duties in the memorandum, including "[m]anaging a staff of two or more full time employees . . . with input on hiring, firing" and "[u]sing discretion and . . . decision making authority with respect to matters that are important at the branch." (Id. at Bates stamped page D8029.)

In short, the proof Plaintiff presents is specific to his situation and is not representative of the putative class. See Mike, 274 F. Supp. 2d 216, 221 ("The nature of Mike's

claim necessarily precludes proceeding on a collective basis.  Mike does not challenge a Safeco policy, but rather asserts that Safeco treated him in a certain way.").  Because Plaintiff has no collective proof and Plaintiff's claims are not amenable to generalized evidence, the Court would not be able to manage the class without potentially prejudicing the parties.  Collective action treatment of Plaintiff's claims would not meet the Supreme Court's enunciated objective of limiting the controversy to one proceeding that efficiently resolves common issues of law and fact.  See Hoffman-La Roche, 493 U.S. at 170; see also Mike, at 221 ("There is no way for the court to conclude that resolution of the claims of many plaintiffs at the same time would be sensible.").  Furthermore, certifying a collective action in this case would undermine, rather than promote, the purpose of judicial efficiency.

### E.  There Is Insufficient Showing Of Potential Class-Members Who Desire To Opt In

Predominance of individualized issues aside, Plaintiff's Motion for conditional certification should be denied because one declaration submitted by the Plaintiff fails to demonstrate that additional individuals desire to opt in to the action.  Plaintiff "offers no deposition testimony or declarations submitted by other members of the potential class." Hendricks, 2009 WL 5170180, at *9 (denying conditional certification).  Moreover, "unlike in other cases, there are no individuals who have already opted in to this action at this stage."  Id.

A district court, in considering whether to give notice to potential class members of an alleged FLSA class, "should satisfy itself that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated.'"  Dybach v. Florida Dep't of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. Fla. 1991); see also H&R Block, Ltd. v. Housden, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (citation omitted) (requiring plaintiff to "come forward with competent evidence suggesting that such class members exist.").

Plaintiff has no indicia of support in proceeding collectively from the putative class. Consequently, he fails to meet the fundamental underpinning of a *collective* action, as he:

> must present at least *some* evidence that at least one other employee was harmed. If there is no evidence that any other employees are involved, let alone similarly situated employees, allowing for opt-in notification and discovery throws a huge burden upon [Defendants] without any indication that the goals of the collective action mechanism are likely to be met.

Powers v. Centennial Communications Corp., No. 1:08-cv-208-PPC, 2009 U.S. Dist. LEXIS 116819, at *12 (N.D. Ind. Dec. 14, 2009) (emphasis in the original) (citing Woods v. New York Life Ins. Co., 686 F.2d 578, 581 (7th Cir. 1982); *and* declining to decide an exact number of other employees that are required for a plaintiff to demonstrate sufficient interest in a collective action, but noting "with certainty that zero is not enough."). See also, Rodgers v. CVS Pharmacy, Inc., No. 8:05-CV770T, 2006 WL 752831, at *3 (M.D. Fla. 2006) (quoting Mackenzie v. Kindred Hosps., East, L.L.C., 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) ("plaintiff's or counsel's belief in the existence of other employees who desire to opt in and 'unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify' certification of a collective action and notice to a potential class.").

The instant case has been pending for approximately six months, during which time Plaintiff's counsel has advertised this case on its website and invited other Operations Managers to join the case. In addition, Plaintiff testified that he contacted other putative class members about this lawsuit. No one from the putative class submitted a declaration. No one from the putative class has opted in. On this legal deficiency alone, Plaintiff has not met the evidentiary standard for conditional certification and his motion should be denied.

### F. Improper Proposed Notice

Plaintiff requests permission to send a proposed notice (Exhibit A to Plaintiff's Motion) to putative class members by mail. The proposed notice is improper because it is overly solicitous, one-sided, and fails to provide the Defendants' description of the lawsuit, including why Defendants do not owe putative class members for overtime (e.g., the putative class members are properly classified as exempt). Instead, the notice improperly portrays the case as a free chance at money for any of Defendants' Operations Managers.[116]

## III. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Certification should be denied.

Respectfully submitted,

DEFENDANTS,
UNITED RENTALS, INC. and UNITED
RENTALS (NORTH AMERICA) INC.

By its attorneys,

*/s/ William J. Anthony*
William J. Anthony (ct 17865)
anthonyw@jacksonlewis.com
David R. Golder (ct 27941)
golderd@jacksonlewis.com
Jackson Lewis LLP
90 Statehouse Square, 8th Floor
Hartford, CT 06103
Tel: (860) 522-0404
Fax: (860) 247-1330

---

[116] Plaintiff also requests the Court to require Defendants to provide additional, unnecessary personal information including telephone numbers and Social Security numbers. (Motion, p. 18.) This request is improper. Any information beyond employee name and last known address is unwarranted and intrusive, could encourage improper and unauthorized contact, and therefore should not be disclosed. <u>See, e.g.</u>, <u>Gordon v. Kaleida Health</u>, No. 08-CV-378S, 2009 U.S. Dist LEXIS 95729, at *31 (W.D.N.Y. Oct 14, 2009) ("[t]he Court agrees that, in the interest of privacy, Kaleida need not produce phone numbers, social security numbers, dates of birth, and e-mail addresses").

<u>CERTIFICATION OF SERVICE</u>

I hereby certify that on July 13, 2010, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


*/s/ William J. Anthony*
William J. Anthony

4821-4203-2902, v.  6